UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MILLER FAMILY INDUSTRIES, INC.,

              Plaintiff,

-against-

CHRISTOPHER IVES,

              Defendant.

No. 1:25-cv-02923-LJL

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
CHRISTOPHER IVES'S MOTION TO DISMISS AND FOR FEES AND COSTS**

Dated: New York, New York
      April 16, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................................................ 5

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND............................................ 7

ARGUMENT ........................................................................................................................ 13

    I.    The Court Should Dismiss the Complaint Under the Doctrine of *Forum Non Conveniens* Due to the MOU's Exclusive Delaware Venue Clause and Then Award Defendant Attorneys' Fees and Costs Pursuant to the MOU. ....................................................13

        a.    The MOU's Clear, Unambiguous, and MandatoryVenue Clause Undoubtedly Applies to This Action and Requires Dismissal. ................................................................ 13

        b.    The Court Should Award Defendant Attorneys' Fees and Costs as the Prevailing Party Under the MOU's Professional Fees Clause. ...................................................... 19

    II.    The Court Also Should Strike Plaintiff's Deficient Complaint for Not Being Signed by an Attorney In Derogation of Fed. R. Civ. P. 11(a) and Consequently Dismiss This Action. ...................................................................................................................20

    III.    Alternatively, the Court Should Dismiss Plaintiff's Complaint for Failure to State a Claim. ..............................................................................................................................21

        a.    The Court Should Dismiss the Negligent Misrepresentation Court for the Obvious Infirmity of Not Alleging the Required Special Relationship. ........................................... 22

        b.    The Court Should Grant Defendant's Motion to Dismiss the Common Law Fraud Count Including Because It Is Impermissibly Duplicative of the Breach of Contract Claim…………………………………………………………………………………..23

        c.    The Court Should Dismiss the Fraudulent Inducement Court Including Because It Improperly Alleges Non-Actionable Statements of Future Intent. ..................................... 23

        d.    The Court Should Grant Defendant's Motion to Dismiss the Breach-of-Contract Count Because MFI Admits It Did Not Perform Under the MOU................................................. 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*,
  992 A.2d 1239, 1252 (Del. Ch. 2010)................................................................. 18
*Ashcroft v. Iqbal*, ................................................................................................
  556 U.S. 662, 678 (2009) ................................................................. 21, 22, 24
*Ammann v. Sharestates, Inc.*, ................................................................................
  2024 WL 1956237, at *5–*11 (E.D.N.Y. Mar. 21, 2024) ................................ 22
*Bako Pathology LP v. Bakotic*, ..............................................................................
  288 A.3d 252, 280 (Del. 2022) ................................................................. 19, 20
*Bell Atl. Corp. v. Twombly*, ..................................................................................
  550 U.S. 544, 570 (2007)................................................................................. 21
*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,............................
  98 F.3d 13, 19-20 (2d Cir. 1996) ................................................................... 23
*Brooke Grp. Ltd. v. JCH Syndicate*, .....................................................................
  *488*, 87 N.Y.2d 530, 534 (1996)................................................................... 14
*Carlyle Inv. Mgmt. v. Nat'l Indus. Grp. (Holding)*,.............................................
  2012 WL 4847089, at *10 (Del. Ch. Oct. 11, 2012) ...................................... 17
*Cfirstclass Corp. v. Silverjet PLC*,.......................................................................
  560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) ....................................... 16, 17, 18
*Coppelson v. Serhant*,............................................................................................
  2021 WL 148088, at *6–*7 (S.D.N.Y. Jan. 15, 2021) .................................... 23
*Cuhadar v. Savoya, LLC*, ......................................................................................
  2025 WL 510870, at *6 (E.D.N.Y. Feb. 17, 2025) ......................................... 15
*DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, ..........................
  2024 WL 1326964, at *1 (2d Cir. Mar. 28, 2024)..................................... 15, 19
*Direct Mail Prod. Servs. v. MBNA Corp.*,.............................................................
  2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) ........................................ 17
*Douyon v. N.Y. Med. Health Care, P.C.*, ..............................................................
  2011 WL 1740630, at *2 (E.D.N.Y. May 4, 2011) ......................................... 21
*Effron v. Sun Line Cruises*,...................................................................................
  267 F.3d 7, 9 (2d Cir. 1995)............................................................................ 15
*Fasano v. Yu Yu*, ...................................................................................................
  921 F.3d 333, 335 (2d Cir. 2019) ................................................................... 14
*Freeman v. Bianco*, ...............................................................................................
  2003 WL 179777, at *5 (S.D.N.Y. Jan. 24, 2003) ............................... 6, 14, 15
*GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC*,........................
  2025 WL 919652, at *3 (S.D.N.Y. Mar. 26, 2025) ........................................ 13
*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,...................................................
  812 F. Supp. 2d 377, 384–85 (S.D.N.Y. 2011)........................................ 16, 18
*Lerner v. Fleet Bank, N.A.*,...................................................................................
  459 F.3d 273, 290 (2d Cir. 2006) .............................................................. 22, 23
*Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, ...............................................
  818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011) .............................................. 15

*Mahani v. Edix Media Grp., Inc.*, ........................................................................................................
    935 A.2d 242, 245 (Del. 2007 .................................................................................................. 19
*Mandarin Trading Ltd. v. Wildenstein*, ................................................................................................
    16 N.Y.3d 173, 180 (2011)...................................................................................................... 22
*Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, ..............................................................
    571 U.S. 49, 60 (2013)............................................................................................................ 13
*Martinez v. Bloomberg LP*, ..................................................................................................................
    740 F.3d 211, 218 (2d Cir. 2014) ........................................................................ 13, 14, 15, 18
*Mills v. Polar Molecular Corp.*, ..........................................................................................................
    12 F.3d 1170, 1175 (2d Cir. 1993) ......................................................................................... 22
*Molokotos-Liederman v. Molokotos*, ...................................................................................................
    2023 WL 5977655, at *16 (S.D.N.Y. Sept. 14, 2023) ........................................................... 16
*Person v. Google, Inc.*, ........................................................................................................................
    456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006) ........................................................................... 19
*Prod. Res. Grp., L.L.C. v. Martin Pro.*, ..............................................................................................
    *A/S*, 907 F. Supp. 2d 401, 410–11 (S.D.N.Y. 2012) ............................................................. 16
*Rabinowitz v. Kelman*, ..........................................................................................................................
    75 F.4th 73, 81 (2d Cir. 2023)........................................................................... 14, 16, 18, 19
*RIA R Squared, Inc. v. DW Partners, LP*, ...........................................................................................
    230 A.D.3d 983, 986 (1st Dep't 2024)................................................................................... 22
*Simon v. Navellier Series Fund*, ..........................................................................................................
    2000 WL 1597890, at *3 (Del. Ch. Oct. 19, 2000)................................................................ 18
*SPay, Inc. v. Stack Media Inc.*, ............................................................................................................
    2021 WL 1109181, at *4 (Del. Ch. Mar. 23, 2021) .............................................................. 17
*Swan Media Grp., Inc. v. Staib*, ..........................................................................................................
    841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012) ..................................................................... 24, 25
*Tradeshift, Inc. v. Smucker Servs. Co.*, ...............................................................................................
    2021 WL 4463109, at *5 (S.D.N.Y. Sept. 29, 2021) ............................................................ 24
*Ujvari v. 1stdibs.com, Inc.*, ..................................................................................................................
    2017 WL 4082309, at *7 (S.D.N.Y. Sept. 13, 2017) ............................................................ 15
*West v. Access Control Related Enters., LLC*, ....................................................................................
    296 A.3d 378, 387 (Del. 2023) .............................................................................................. 14
*320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, ............................................................................
    194 A.D.3d 511, 512 (1st Dep't 2021).................................................................................... 24

## RULES

Fed. R. Civ. P. 11(a) ................................................................................................................. 20
Fed. R. Civ. P. 81(c)(2)(C) ....................................................................................................... 13
Fed. R. Civ. P. 9(b)................................................................................................................... 21

4

Defendant Christopher Ives, by and through his undersigned counsel, respectfully submits this Memorandum of Law in Support of Defendant's Motion to Dismiss and for Fees and Costs. For all the reasons enumerated below, Defendant respectfully requests that the Court dismiss this action under the doctrine of *forum non conveniens* and Fed. R. Civ. P. 11(a), 12(b)(3), and12(f), and award Defendant his reasonable attorneys' fees and costs pursuant to the fee-shifting provision in the at-issue Memorandum of Understanding. *See* Declaration of Christopher R. Ives dated April 16, 2025 ("Ives Decl.") Ex. A ("MOU"). In the alternative, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In all events, Defendant further respectfully requests that the Court order any additional relief that it deems necessary, just, or proper.

## PRELIMINARY STATEMENT

Conglomerate Plaintiff Miller Family Industries, Inc. ("MFI"), in conjunction with its subsidiary, Levo Funding, Inc. ("Levo"), brought this action against individual Defendant Christopher Ives in New York instead of Delaware purposely to "hurt," "crush," and "bleed" him since "they know [he] can't afford" to litigate a lawsuit in New York. Ives Decl. ¶ 6. Aside from these shocking words from a Levo executive, Plaintiff's true motivations can best be ascertained by examining the Complaint's treatment of the MOU. The MOU is the gravamen of Plaintiff's Complaint and the express subject of its Fourth Count for Breach of Contract—the MOU *is* the "contract" (or "Agreement") that was allegedly breached. *See* Compl. ¶¶ 36–43 (ECF No. 1-1). Yet, Plaintiff did not attach the MOU or file it along with its Complaint. Why? Because the MOU contains a clear, unambiguous, and mandatory forum selection clause designating Delaware as the exclusive venue for disputes. It provides:

> **6. <u>Governing Law and Venue.</u>** This MOU and the rights and obligations
> of the Parties hereunder shall be governed, construed and their provisions

interpreted by, under and in accordance with, the laws of the State of Delaware (excluding the laws applicable to conflicts or choice of law). The Parties hereto, to the extent that they may legally do so, hereby irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware.

MOU ¶ 6 (emphasis in original). Unsurprisingly, in addition to not attaching the MOU, the Complaint's text does not deign to inform the Court about the MOU's Delaware venue clause.

It does not take a large inferential leap to realize that MFI sought to hide the MOU's Delaware venue clause from the Court and potentially-unsuspecting counsel. Indeed, in a similar scenario where plaintiffs tried to avoid the statute of limitations, then-District Judge Lynch opined:

While bad faith is no longer required to support an award of sanctions, the deliberate omission from the complaint of any reference to the dates of the events alleged, and of the texts of the agreements in question (which would have revealed those dates), strongly suggests that the plaintiffs and their counsel were aware of the statute of limitations problem from the outset and attempted to hide it.

*Freeman v. Bianco*, 2003 WL 179777, at *5 (S.D.N.Y. Jan. 24, 2003) (Lynch, J.).

Due to this outrage, and many more, Defendant's counsel has sent Plaintiff and its counsel a 14-page, single-spaced Rule 11 safe-harbor letter. *See* Declaration of Michael S. Marron, Esq., dated April 16, 2025 ("Marron Decl.") Ex. 1. Rule 11's safe-harbor period of 21 days remains open, and in the interim Defendant must move against Plaintiff's deficient Complaint.

This Motion simply requests that the Court enforce the clear terms of the MOU. In accordance with a bevy of well-established precedent discussed below, the Court should dismiss this action under the doctrine of *forum non conveniens* because of the MOU's clear, unambiguous, and mandatory forum selection clause. Moreover, after dismissing this lawsuit due to the MOU's Delaware venue clause, the Court should award Defendant his reasonable attorneys' fees and costs pursuant to the MOU's applicable fee-shifting provision, which provides "that if any arbitration or litigation is necessary to interpret or enforce the terms of this MOU, the prevailing party will be

entitled to recover its reasonable attorney's fees and costs." MOU ¶ 12. Additionally, the Court should also dismiss this action pursuant to Fed. R. Civ. P. 11(a), since no attorney signed Plaintiff's Complaint. *See* ECF No. 1-1.

In the alternative, the Court should dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The negligent misrepresentation count does not even attempt to plead the requisite special relationship; the fraudulent inducement and common law fraud claims are not alleged with sufficient particularity and impermissibly seek recovery for non-actionable statements of future intent; and the breach-of-contract cause of action necessarily fails because Plaintiff admits it did not perform under the MOU.

For these and all the following reasons, Defendant respectfully requests that the Court grant his Motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On or about May 23, 2023, the parties in this action entered into the Memorandum of Understanding by, between and among Miller Family Industries, LLC,[1] Christopher Ives, Wendy Peza, and Jenny Merris. *See* Compl. pmbl. & ¶¶ 12, 38; Ives Decl. ¶ 2; MOU pmbl. Pursuant to the terms of the MOU, the parties did "all things necessary" "to form a limited liability company under the Delaware Limited Liability Company Act." MOU pmbl. & ¶ 1; Compl. ¶ 13; Ives Decl. ¶ 3. That limited liability company, Levo Funding, Inc., "was incorporated in the State of Delaware on May 31, 2023." Compl. ¶ 13; *see* Ives Decl. ¶ 3. At all times relevant to this action, Levo had its main office, and principal place of business, in San Diego County, California. Ives Decl. ¶ 3.

---

[1] Technically, the MOU names the agreeing entity as "Miller Family Industries, *LLC*," whereas plaintiff in this action is named as "Miller Family Industries, *Inc*." Nevertheless, the Complaint alleges and thus concedes that "MFI,"—defined as Miller Family Industries, Inc.—"and the Defendant entered into a Memorandum of Understanding" "[o]n May 23, 2023." Compl. pmbl. & ¶¶ 12, 38.

Mr. Ives was Levo's CEO pursuant to a written Employment Agreement. *See* Ives Decl. ¶ 4 & Ex. B ("Levo Employment Agreement"). For reasons that remain unclear, MFI refused to fund Levo pursuant to its obligations set forth in the MOU, including as explained in detail below. *See* Ives Decl. ¶ 5; *see also* Compl. ¶ 39 (alleging MFI's funding of Levo). Nevertheless, Mr. Ives "deliver[ed] substantial value for Levo despite the impediments from lack of funding, and [he] continued to fulfill all of [his] obligations under the MOU and Levo Employment Agreement." Ives Decl. ¶ 5. In spite of his best efforts and stellar performance, in early 2024, MFI and Levo, acting through Jenny Merris, wrongfully placed Mr. Ives on leave and then wrongfully terminated him from Levo on February 21, 2024. *Id.*

Before Ms. Merris wrongfully terminated Mr. Ives, on February 15, 2024, she issued a number of threats warning him against taking legal action against MFI or Levo. *Id.* ¶ 6. For example, she asserted that MFI is "ruthless" and threatened that MFI would "crush" or "hurt" him, and "ruin" his "reputation," if he sued MFI or Levo. *Id.* Of particular note for the purposes of this Motion, Ms. Merris warned Mr. Ives that if he took legal action against MFI or Levo, they would sue him in New York (or New Jersey). *Id.* She expressly admitted that MFI would sue him in New York because "they [MFI] know [he] can't afford it" and that MFI's strategy "will bleed" him since he and his family would not be able to handle the costs of the travel and legal fees. *Id.* Mr. Ives thus "understood Jenny Merris's clear threat to be that New York would be an unreasonably expensive and inconvenient place for [him] to defend against a lawsuit." *Id.*

Ultimately, on September 10, 2024, Mr. Ives brough suit related to breach of his Employment Agreement against Levo in the Superior Court of the State of California, County of San Diego, in the action captioned *Christopher Ives v. Levo Funding, Inc.*, No. 24CU011858N (Cal. Super. Ct. S.D. Cty.) ("California Action"). *See id.* ¶ 7 & Ex. C. Levo subsequently moved

to compel arbitration of the California Action. On February 20, 2025, the court in the California Action issued its Tentative Ruling—ahead of a February 21, 2025 hearing—that granted Levo's motion to compel arbitration. *See id.* ¶ 8 & Ex. D.

On February 21, 2025—the very same day as the hearing in the California Action confirming that it was being ordered to arbitration—MFI filed the operative Complaint in this action. *See* ECF No. 1-1; Ives Decl. ¶ 9. MFI originally filed the Complaint in the Supreme Court of the State of New York, County of New York, in the action captioned *Miller Family Industries, Inc. v. Christopher Ives*, No. 152387/2025 (Sup. Ct. N.Y. Cty.) ("NY State Action"). On April 9, 2025, Defendant properly removed the NY State Action to this Court pursuant to the Court's original diversity jurisdiction. See ECF Nos. 1–2.

The Complaint can muster only **one** alleged event as its entire basis for venue in New York. *See* Compl. ¶¶ 3–7. It admits that MFI is a Delaware entity based in New Jersey, that Mr. Ives is a resident of California, and it remains silent on Delaware corporation Levo's principal place of business (which also was California at all relevant times). *See* Compl. ¶¶ 2–3; Ives Decl. ¶ 3. It discusses investments and "funding to small and medium size businesses in various parts of the country, including the States of California and Texas," but not New York. Compl. ¶¶ 7, 37. The Complaint does not inform the Court that the MOU contains a mandatory, clear, and unambiguous forum selection clause, which states that "[t]he Parties hereto, to the extent that they may legally do so, hereby irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware." MOU ¶ 6. And despite the fact that one of its four Counts is for breach of the MOU, the Complaint does not see fit to attach the MOU itself. *See* Compl. ¶¶ 36–43.

9

Rather, aside from legally formalistic language,[2] the Complaint bases the propriety of its New York venue solely on the following allegations in one paragraph:

> In the early spring of 2023, MFI was approached by the Defendant regarding the creation and establishment of a proposed company which would provide commercial working capital and financing products to small and medium sized businesses located across the United States. In or about April of 2023, the Defendant first contacted MFI and conferred with its principals, Alan and Abraham Miller, regarding this proposal and request for capital to be provided by MFI to fund the operations of the proposed company. The Defendant met with the principals of MFI, Alan and Abraham Miller in-person within the State of New York to discuss this proposal and capital request. During those initial discussions, the Defendant represented to MFI that he was running a business called Austin Business Finance d/b/a Back'D, a small business funding entity based in Austin, Texas, and that he was interested in creating a larger financial services company that would provide funding to small and medium size businesses in various parts of the country, including the States of California and Texas.

*Id.* ¶ 7. Notably, the Complaint nowhere else advances any allegations regarding events supposedly transpiring in the State of New York—because there were none.

Mr. Ives's sworn testimony, bolstered by contemporaneous written documents, reveals that the Complaint's allegations regarding this single conversation are wildly exaggerated to the point of rendering them fantastical. Mr. Ives clarifies that on May 8, 2023, he "did not have any significant or substantive 'initial discussions' about Levo (or any other company) in New York City with Alan and Abe Miller." Ives Decl. ¶¶ 10–11 (quoting Compl. ¶ 7). Instead, he merely "spoke with the Millers for about 15 minutes at the hotel lobby bar of an industry event in New York. There were no negotiations during this brief meetup. We did not discuss substantive terms

---

[2] The Complaint makes legally conclusory allegations that Mr. Ives "solicited Plaintiff's participation in the events made the subject matter of this lawsuit in the State of New York," *id.* ¶ 3; that "[j]urisdiction is proper in this matter, seeing the events made the subject matter of this lawsuit occurred in the State of New York," *id.* ¶ 4; and that "[v]enue is proper in this Court because a substantial part of the events, transactions and/or occurrences giving rise to Plaintiff's claims set forth herein occurred within this judicial district," *id.* ¶ 6. The Complaint also does not seem to have a paragraph 5. *See id.* ¶¶ 3–6.

regarding the MOU or Levo. Indeed, there were no laptops, no presentations, and no materials." *Id.* ¶ 11.

Mr. Ives further explains that "it would have been impossible to have substantive 'initial discussions' with the Millers on May 8, 2023 [in New York], because by that time, negotiations regarding the MOU and Levo were either completed or well developed." *Id.* ¶ 12 (quoting Compl. ¶ 7). He cites two contemporaneous documents supporting this sworn statement. In the first:

> MFI's own Meeting Minutes from May 1, 2023, reflect discussions regarding employee hires and roles, investment opportunities, ownership percentages, and back office support for Levo. They note, among other things, that "Abe [Miller] has worked up a fund," "Alan and Abe [Miller] willing to deploy $100M to start," and that "Jenny [Merris] is working on the MOU" and "[w]ill get it to Alan and Abe by the end of the week" (before May 8, 2023).

*Id.* ¶ 13 (quoting Ex. E). Second, Mr. Ives avers that "email correspondence between and among Wendy Peza, Abe Miller, Alan Miller, MFI's Gabriela Lavin, and [Mr. Ives] from May 3, 2023, through May 5, 2023, show that [they] had already discussed specific equity percentages for Levo." *Id.* ¶ 14 (citing Ex. F). Thus, contemporaneous evidence buttresses Mr. Ives's assertion that his May 8, 2023, meetup with the Millers in New York was "insignificant" and did not include "significant or substantive 'initial discussions' about Levo." *Id.* ¶¶ 10–11. And considering Ms. Merris's prior threats, Mr. Ives's belief "that MFI filed the NY State Action in New York for the purpose of harassing [him] and forcing [him] to expend additional costs litigating in a far-away and inconvenient forum" appears well-founded. *Id.* ¶ 16.

For purposes of analyzing venue, it is further noteworthy that the three non-breach-of-contract Counts in the Complaint are inextricably intertwined with the MOU. The First Count for "Fraudulent Inducement" is for *inducement into the MOU itself*, as Defendant allegedly "induce[d] MFI to create and fund the operations of Levo"—the very subject of the MOU. *Id.* ¶ 17; *see* MOU ¶¶ 1–2 (obligations for MFI to help create a "Delaware limited liability company" (Levo) and then

11

contribute funds to it). In the same vein, the Third Count (negligent misrepresentation) alleges that "[a]s a consequence of Plaintiff's justifiable and/or detrimental reliance upon Defendant's negligent misrepresentations, MFI sustained damages resulting from first creating Levo Funding, Inc., and advancing $5,925,000.00 in startup and operational funds"—in other words, "damages resulting from" *entering into the MOU and performing thereunder*. Compl. ¶ 34; *see* MOU ¶¶ 1– 2. And the Second Count for common law fraud completely overlaps with the breach-of-contract claim. It asserts that alleged "misrepresentations and omissions" caused MFI "to continue funding the day-to-day operations of Levo Funding, Inc. in 2023 and 2024," and it essentially attempts to repackage Defendant's statements about intending to perform under the MOU as a fraud claim. Compl. ¶¶ 25–26. Put another way, the Complaint is arguing that the "Common Law Fraud" caused MFI to continue performing under the MOU. *See* MOU ¶¶ 1–2.

Finally, in terms of stating a claim upon which relief can be granted, the Complaint's allegations are legally deficient, lack particularity, and are self-contradictory and thus self-defeating. For its negligent misrepresentation claim, the Complaint does not and cannot plead the required special relationship between MFI and Mr. Ives. *See* Compl. ¶¶ 30–35. The Counts for common law fraud and fraudulent inducement improperly seek recovery for non-actionable statements of future intent and are based on allegations that are not sufficiently particular—they do not include the who, what, when, and where of the supposed misrepresentations. *See* Compl. ¶¶ 16–29. The breach-of-contract claim inadvertently admits that MFI itself did not perform its obligations under the MOU, despite its assertion to the contrary that "MFI performed under the terms of the [MOU]." *Id.* ¶ 39. The Complaint alleges that MFI "advance[d] more than $5,925,000.00 over the course of the ensuing six (6) months" to Levo after it was formed. *Id.* But the MOU's clear terms indicate that MFI was required to contribute more than that, as it states that

12

"MFI will undertake to [Levo] the monthly sum of two to five million ($2,000,000.00 - $5,000,000.00) . . . with the firsts [sic] monthly contribution contemplated to begin within ninety (90) days of formation of the proposed company." MOU ¶ 2(b). Accordingly, MFI's "advance" of $5,925,000 was well below the figure that it was obligated to contribute.

* * *

Because Defendant Christopher Ives properly removed the NY State Action to this Court pursuant to the Court's original diversity jurisdiction on April 9, 2025, his motion to dismiss is due "7 days after the notice of removal is filed" and is timely filed on April 16, 2025. Fed. R. Civ. P. 81(c)(2)(C).

## ARGUMENT

I. **The Court Should Dismiss the Complaint Under the Doctrine of *Forum Non Conveniens* Due to the MOU's Exclusive Delaware Venue Clause and Then Award Defendant Attorneys' Fees and Costs Pursuant to the MOU.**

   a. <u>The MOU's Clear, Unambiguous, and Mandatory Venue Clause Undoubtedly Applies to This Action and Requires Dismissal</u>

The United States Supreme Court has "held that generally 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*,' rather than Rule 12(b)." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)).[3] "In deciding a motion to dismiss based on a forum-selection clause, 'a district court typically relies on pleadings and affidavits,' unless there are disputed facts that would require an evidentiary hearing." *GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC*, 2025 WL 919652, at *3 (S.D.N.Y. Mar. 26, 2025) (quoting *Martinez*, 740 F.3d at 216–17).

---

[3] Nevertheless, in an abundance of caution, Defendant also respectfully requests that the Court dismiss Plaintiff's action under Fed. R. Civ. P 12(b)(3) if it determines that Rule to be a more appropriate vehicle.

13

Forum selection clauses are "presumptively valid under federal [and] New York . . . law," as well as Delaware law. *Freeman v. Bianco*, 2003 WL 179777, at \*5 (S.D.N.Y. Jan. 24, 2003) (Lynch, J.); *see West v. Access Control Related Enters., LLC*, 296 A.3d 378, 387 (Del. 2023) (forum selection provisions "presumptively valid" under Delaware law); *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996) (forum selection clauses "prima facie valid and enforceable" under New York law). For its part, the MOU's venue clause is exclusive, expansive, unequivocal, and clear:

> **6. <u>Governing Law and Venue</u>.** This MOU and the rights and obligations of the Parties hereunder shall be governed, construed and their provisions interpreted by, under and in accordance with, the laws of the State of Delaware (excluding the laws applicable to conflicts or choice of law). The Parties hereto, to the extent that they may legally do so, hereby irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware.

MOU ¶ 6 (emphasis in original). Accordingly, the Court should not hesitate to dismiss this action pursuant to the MOU's unambiguous venue clause under Second Circuit precedent holding that "[w]here the parties have contractually selected a forum . . . the forum selection clause 'substantially modifies' the *forum non conveniens* doctrine and the 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'" *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam) (cleaned up) (quoting *Martinez*, 740 F.3d at 218).

Specifically, the Second Circuit provides that:

> a district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory . . . ; and (3) the claims and parties to the dispute are subject to the clause.

*Id.* "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023) (quoting *Martinez*, 740 F.3d at 217). At that

14

point, a "party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, 2024 WL 1326964, at *1 (2d Cir. Mar. 28, 2024) (summary order) (quoting *Martinez*, 740 F.3d at 217). Importantly, "federal common law" governs analysis of this fourth prong and also the first prong. *Id.* (internal quotation marks omitted); *Ujvari v. 1stdibs.com, Inc.*, 2017 WL 4082309, at *7 (S.D.N.Y. Sept. 13, 2017). But for the second and third prongs, "if [courts] are called upon to determine whether a particular forum selection clause is mandatory or permissive, or whether its scope encompasses the claims or parties involved in a certain suit, [courts] apply the law contractually selected by the parties." *Martinez*, 740 F.3d at 218 (citation omitted).

Here, there can be no question that prong (1) is satisfied, as the MOU's forum selection clause was "reasonably communicated" in the unambiguous language found in paragraph 6. "A forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011) (citing *Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995)). "Courts in this Circuit have found" that a "forum selection clause was reasonably communicated" where, as here, the "clause was contained in the main body of the agreement in standard font and in formatting conventions consistent with the rest of the contract." *Cuhadar v. Savoya, LLC*, 2025 WL 510870, at *6 (E.D.N.Y. Feb. 17, 2025) (collecting cases). And as then-District Judge Lynch held in a similar situation: "There is no basis for disregarding the [choice-of-forum] clause[] in this case. The clause[] . . . [is] not [a] boilerplate provision[] in fine print on the back of a commercial entity's form, but [is] clearly set forth in a specifically negotiated and drafted agreement." *Freeman*, 2003 WL 179777, at *5. The same is true of the MOU's venue clause—it is "clearly set

15

forth" in paragraph 6 of an agreement that was specifically negotiated and drafted among the parties. *See* MOU ¶ 6; *see also* Ives Decl. ¶ 13 & Ex. E (reflecting drafting of MOU). The answer to the prong (1) "question" is thus "yes." *Rabinowitz*, 75 F.4th at 81.

In much the same vein, the MOU's venue clause is undeniably "mandatory" under prong (2). "The language 'submit to the exclusive jurisdiction' is 'precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory.'" *Molokotos-Liederman v. Molokotos*, 2023 WL 5977655, at *16 (S.D.N.Y. Sept. 14, 2023) (quoting *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 410–11 (S.D.N.Y. 2012)) (collecting cases). Similarly, where a forum selection clause contained language providing that each party "consents to the exclusive jurisdiction of the state and federal courts sitting in California," the court held that a litigant "correctly identifie[d] the patently mandatory nature of the clause." *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 384–85 (S.D.N.Y. 2011). Here, the MOU venue clause likewise states that the parties "irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware." MOU ¶ 6. Therefore, it is "patently mandatory." *KTV*, 812 F. Supp. 2d at 385.

Moreover, there can be no reasonable dispute under prong (3) that the MOU's venue clause applies to the "claims and parties" in this action. The MOU is by and between Plaintiff MFI and Defendant Christopher Ives (and others), the very parties to this action. *See* MOU pmbl. "Where broadly worded, a 'forum selection clause is not limited solely to claims for breach of the contract that contains it.'" *KTV*, 812 F. Supp. 2d at 385 (quoting *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008)). The MOU's venue clause is indeed broadly worded, since the parties agreed for it to apply "to the extent that they may legally do so." MOU ¶ 6. And significantly:

> [C]ourts, including this one, have held that "a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."

*Cfirstclass*, 560 F. Supp. 2d at 329 (quoting *Direct Mail Prod. Servs. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)).

Here, the MOU's venue clause easily applies to all four of the Complaint's claims. Most fundamentally, the Complaint's Fourth Count self-evidently falls under the MOU's venue clause, because it is for "Breach of Contract" and alleges that Mr. Ives supposedly "breached" the "Agreement," which is defined as the "Memorandum of Understanding" that "MFI and the Defendant entered into" "[o]n May 23, 2023." Compl. ¶¶ 38, 41–42. The First Count for "Fraudulent Inducement" is similarly for *inducement into the MOU itself*, and when analyzing forum selection clauses, "[c]laims for fraudulent inducement arise out of the contract the plaintiff allegedly was induced to enter." *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *4 (Del. Ch. Mar. 23, 2021) (holding the relevant "Forum Selection Clause encompasses claims for fraudulent inducement").[4] Likewise, the Third Count alleges that "[a]s a consequence of Plaintiff's justifiable and/or detrimental reliance upon Defendant's negligent misrepresentations, MFI sustained damages resulting from first creating Levo Funding, Inc., and advancing $5,925,000.00 in startup and operational funds,"—in other words, "damages resulting from" *entering into the MOU and performing thereunder*. Compl. ¶ 34; *see* MOU ¶¶ 1–2 (obligations for MFI to help create a "Delaware limited liability company" (Levo) and then contribute funds to it). Finally, and

---

[4] Notably, "[u]nder Delaware and federal law, a party cannot escape a valid forum selection clause . . . by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection . . . clause itself. Instead, the party must show that the forum selection clause *itself* is invalid." *Carlyle Inv. Mgmt. v. Nat'l Indus. Grp. (Holding)*, 2012 WL 4847089, at *10 (Del. Ch. Oct. 11, 2012) (emphasis in original).

17

as further discussed below, the Second Count for "Common Law Fraud" essentially concerns MFI performing under the MOU in "continu[ing] funding the operations of Levo Funding, Inc." and therefore it falls under the MOU's venue clause. Compl. ¶¶ 23–29; *see Cfirstclass*, 560 F. Supp. 2d at 329.

In any event, it bears emphasis that "[c]ourts in Delaware and other jurisdictions have found that '[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship.'" *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *3 (Del. Ch. Oct. 19, 2000)); *accord KTV*, 812 F. Supp. 2d at 387 (same). In *Ashall*, just like here, the "[p]laintiffs' non-contract claims depend upon the same set of facts as their contract claims. That is, all of the claims involve the [p]laintiffs' initial decision to invest, their execution of the [relevant] Agreements, and the parties' performance of their obligations under those agreements." *Ashall*, 992 A.2d at 1253. Accordingly, the Court should dismiss this action under the doctrine of *forum non conveniens*, since MFI's "claims fall under the forum selection provision[] of the" MOU, which "clearly mandate[s] that the" Delaware "courts have exclusive jurisdiction over any disputes arising from the" MOU. *Id.* at 1254 (granting motion to dismiss under Delaware Rule 12(b)(3) in favor of venue in English court).

Finally, MFI will not be able to overcome the MOU venue clause's presumption of validity at step (4) of the analysis, as MFI cannot "make[] a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Rabinowitz*, 75 F.4th at 81 (quoting *Martinez*, 740 F.3d at 217). The Second Circuit has clarified the necessary "strong showing" under prong (4) as follows:

> Our precedents provide that we will enforce a forum-selection clause unless
> "(1) its incorporation was the result of fraud or overreaching, (2) the law to

be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of [its] day in court."

*DarkPulse*, 2024 WL 1326964, at \*2 (quoting *Rabinowitz*, 75 F.4th at 81 n.6). Just like the plaintiff in *DarkPulse*, MFI, a Delaware entity, will be unable to (2) "advance any argument as to why, as a matter of federal common law, the application of Delaware's laws would be fundamentally unfair"; (3) "demonstrate[] that enforcement of the forum-selection clause would contravene a sufficiently strong public policy of New York state"; or (4) show "that trial in Delaware—where [MFI] is incorporated—would be difficult or inconvenient." *Id.* Furthermore, MFI cannot show that (1) the incorporation of the MOU venue clause was the result of fraud or overreaching, because "the fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally." *Person v. Google, Inc.*, 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006). MFI will not be able to make a good-faith "claim of fraud or overreaching in obtaining [its] assent to the forum selection clause," *id.* at 496, as that simply never happened.

For all these reasons, Defendant respectfully requests that the Court dismiss this action under the doctrine of *forum non conveniens* due to the MOU's clear, mandatory venue clause.

b. <u>The Court Should Award Defendant Attorneys' Fees and Costs as the Prevailing Party Under the MOU's Professional Fees Clause</u>

Typically, Delaware courts "follow[] the American Rule, under which litigants are responsible for their own attorneys' fees, regardless of the outcome of the lawsuit." *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 280 (Del. 2022) (internal quotation marks and citation omitted). "An exception to this rule is found in contract litigation that involves a fee shifting provision." *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007). "In contract litigation, where the contract contains a fee-shifting provision, [Delaware courts] will enforce that

provision." *Bako*, 288 A.3d at 280 (internal quotation marks and citation omitted) (holding that the lower court "erred by not awarding attorneys' fees in connection with the litigation of the claims arising under the [applicable] [a]greements").

The MOU has a clear fee- and cost-shifting provision, which expressly states as follows:

> **Professional Fees.** Each of the Parties shall be responsible for the payment of their own professional fees with respect to negotiation and analysis of the transactions contemplated by this MOU; provided, however, that if any arbitration or litigation is necessary to interpret or enforce the terms of this MOU, the prevailing party will be entitled to recover its reasonable attorney's fees and costs.

MOU ¶ 12. If the Court dismisses this action pursuant to the MOU's venue clause, then by definition "litigation w[as] necessary to enforce the terms of this MOU" and Mr. Ives will be the "prevailing party." *Id.* Especially considering MFI's bad-faith, harassing, and retaliatory purpose in bringing the NY State Action in New York as opposed to following the MOU's clearcut venue provision requiring suit in Delaware, it is particularly appropriate for the Court here to enter an order requiring MFI to pay Mr. Ives's attorneys' fees and costs. Accordingly, Defendant respectfully requests that the Court grant Mr. Ives recovery of his "reasonable attorney's fees and costs" in an amount to be determined once adjudication of this Motion is complete.

**II.    The Court Also Should Strike Plaintiff's Deficient Complaint for Not Being Signed by an Attorney in Derogation of Fed. R. Civ. P. 11(a) and Consequently Dismiss This Action.**

Rule 11(a) unambiguously mandates that "[e]very pleading, written motion, and other paper *must* be signed by at least one attorney of record in the attorney's name . . . . The court *must* strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a) (emphasis added). The Complaint filed in New York Supreme Court by MFI is plainly not signed by its attorney, Afiyfa H. Ellington, Esq. *See* ECF No. 1-1 at 13. And Defendant's counsel notified Plaintiff's counsel of this defect on April

20

11, 2015, in his Rule 11 Letter. *See* Marron Decl. Ex. 1. Consequently, Defendant respectfully requests that the Court strike Plaintiff's Complaint and dismiss its case without prejudice. *See In re Fosamax Prods. Liability Litig.*, 2010 WL 1685726, at *2 (S.D.N.Y. Apr. 26, 2010) (striking plaintiff's complaint and dismissing her action without prejudice where complaint had been signed by a former attorney who had been "suspended from the practice of law" at the time and plaintiff made "no attempt . . . to cure this defect"); *see also Douyon v. N.Y. Med. Health Care, P.C.*, 2011 WL 1740630, at *2 (E.D.N.Y. May 4, 2011) (recommendation by U.S. Magistrate Judge that "[t]he lack of signature and the Defendants' failure to correct the error are sufficient grounds for this Court to recommend to Judge Feuerstein that Defendants' pleading be stricken").

III.     **Alternatively, the Court Should Dismiss Plaintiff's Complaint for Failure to State a Claim.**

In the alternative, if the Court does not dismiss this action under the doctrine of *forum non conveniens* or Rule 11(a), Defendant respectfully requests that the Court instead dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Notably, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where, as here, a complaint alleges fraud, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Second Circuit has "explained that in

order to comply with Rule 9(b), 'the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

   a.   The Court Should Dismiss the Negligent Misrepresentation Count for the Obvious Infirmity of Not Alleging the Required Special Relationship.

The Complaint's Third Count for negligent misrepresentation is so patently deficient as to be frivolous and thus sanctionable, as it does not even attempt to plead the "[t]hreadbare recital[] of the elements of [the] cause of action." *Iqbal*, 556 U.S. at 678. Scores upon scores of courts adjudicating New York law have held that a plaintiff seeking recovery under a theory of negligent misrepresentation must allege and prove a "special relationship" between the plaintiff and defendant. They routinely dismiss negligent misrepresentation claims on the pleadings where "[p]laintiff has not alleged any special relationship with" the defendant. *RIA R Squared, Inc. v. DW Partners, LP*, 230 A.D.3d 983, 986 (1st Dep't 2024); *accord, e.g.*, *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011). Because the Complaint here does not even attempt to (and cannot) plead a "special relationship," Compl. ¶¶ 30–35, the Court should dismiss the negligent misrepresentation Count with prejudice.[5]

---

[5] Since MFI brought its fatally deficient negligent misrepresentation claim in the face of "[o]verwhelming and longstanding precedent" to the contrary, Defendant intends to move for Rule 11(b)(2) sanctions at the appropriate time regarding this Count. *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *5–*11 (E.D.N.Y. Mar. 21, 2024) (claim frivolous and sanctionable under Rule 11(b)(2) where it is "legally unreasonable such that it has no chance of success"); *see* Marron Decl. Ex. 1 at 13–14 (explaining basis for forthcoming sanctions motion regarding Complaint's negligent misrepresentation claim).

  b. <u>The Court Should Grant Defendant's Motion to Dismiss the Common Law Fraud Count Including Because It Is Impermissibly Duplicative of the Breach of Contract Claim.</u>

As an initial matter, the Court should dismiss the Second Count for not pleading common law fraud with the particularity required by Rule 9(b), as "it fails to allege except in the most general terms where the statements were made or what about them was false (or even that they were false)" and also does not allege the "when." *Coppelson v. Serhant*, 2021 WL 148088, at *6– *7 (S.D.N.Y. Jan. 15, 2021); *accord Lerner*, 459 F.3d at 290; *see* Compl. ¶¶ 23–29.

Moreover, as a fundamental matter, the Court should dismiss the common law fraud claim because it is duplicative of the breach-of-contract claim. Statements "indicating [an] intent to perform under the contract" are "not sufficient to support a claim of fraud under New York law." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996). Yet that is exactly what the alleged misrepresentations in the Second Count are. *See* Compl. ¶ 25. As but one example, Defendant averring that he "would keep the company's expenses within its established budget" is merely a non-actionable statement regarding an intent to perform under the MOU. Compl. ¶ 25. Consequently, Defendant respectfully requests that the Court dismiss the Second Count.

  c. <u>The Court Should Dismiss the Fraudulent Inducement Count Including Because It Improperly Alleges Non-Actionable Statements of Future Intent.</u>

"A claim for . . . fraudulent inducement is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)." *Coppelson*, 2021 WL 148088, at *6. Like the common law fraud claim, the First Count for fraudulent inducement does not plead with the particularity required by Rule 9(b) since "it fails to allege except in the most general terms where the statements were made or what about them was false (or even that they were false)" and also does not allege the "when." *Id.* at *6–*7; *accord Lerner*, 459 F.3d at 290; *see* Compl. ¶¶ 16–22.

Furthermore, "an actionable claim for fraudulent inducement must allege the representation of present fact, not of future intent." *Tradeshift, Inc. v. Smucker Servs. Co.*, 2021 WL 4463109, at *5 (S.D.N.Y. Sept. 29, 2021) (cleaned up) (quoting *320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, 194 A.D.3d 511, 512 (1st Dep't 2021)). Here, the Complaint alleges such non-actionable representations of future intent, including "that MFI and/or its principals could expect to receive, within the first six (6) months of operation of the new proposed company, a minimum twenty percent (20%) return on investment." Compl. ¶ 18. Therefore, the Court should also dismiss the First Count for fraudulent inducement.

> d. The Court Should Grant Defendant's Motion to Dismiss the Breach-of-Contract Count Because MFI Admits It Did Not Perform Under the MOU.

It is axiomatic that for a plaintiff to recover for breach of contract, the plaintiff itself must have performed under that contract. Courts will dismiss breach-of-contract claims on the pleadings where the "[p]laintiff has failed to sufficiently allege its adequate performance under the [a]greement, a required element under New York law." *Swan Media Grp., Inc. v. Staib*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012). Significantly, even where the "Complaint alleges conclusorily that 'Plaintiff has performed all of its obligations under the Agreement,'" "the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, MFI's allegation that it "performed under the terms of the [MOU]" is contradicted by the terms of the MOU itself, conclusively demonstrating that MFI tacitly admits it did *not* perform. Compl. ¶ 39. The Complaint asserts that MFI "advance[d] more than $5,925,000.00 over the course of the ensuing six (6) months" to Levo after it was formed. *Id.* But the MOU's clear terms indicate that MFI was required to contribute more than that, as it required that "MFI will undertake to [Levo] the monthly sum of two to five million ($2,000,000.00 –

24

$5,000,000.00) . . . with the firsts [sic] monthly contribution contemplated to begin within ninety (90) days of formation of the proposed company." MOU ¶ 2(b). Thus, MFI's "advance" of $5,925,000 was well below the figure that it was obligated to contribute. Accordingly, MFI does not "sufficiently allege its adequate performance" and "as pled, the [C]omplaint fails to state a claim for breach of contract" and should be dismissed. *Swan*, 841 F. Supp. 2d at 808.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court enter an Order dismissing this action under the doctrine of *forum non conveniens* and Fed. R. Civ. P. 11(a), 12(b)(3), and 12(f), and awarding Defendant his reasonable attorneys' fees and costs pursuant to the fee-shifting provision in the Memorandum of Understanding. In the alternative, Defendant respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In all events, Defendant further respectfully requests that the Court enter an Order granting any additional relief that it deems necessary, just, or proper.

Dated: New York, New York
   April 16, 2025

           Respectfully submitted,

           PATRICK | DOERR PLLC

           /s/ Michael Marron
           Michael S. Marron, Esq.
           michael.marron@patrickdoerr.com

           PATRICK | DOERR

           1501 Broadway, Suite 2310
           New York, New York 10036
           Telephone: (212) 680-4052

           *Attorneys for Defendant Christopher Ives*