```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MILLER FAMILY INDUSTRIES, INC.,                                  :
                                                                 :
                        Plaintiff,                               :
                                                                 :         25-cv-2923 (LJL)
        -v-                                                      :
                                                                 :         OPINION AND ORDER
CHRISTOPHER IVES,                                                :
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/4/2025__

LEWIS J. LIMAN, United States District Judge:

Defendant Christopher Ives ("Defendant" or "Ives") moves to dismiss this action under the doctrine of *forum non conveniens* or, in the alternative, for improper venue pursuant to Rule 12(b)(3) or for failure to state a claim for relief pursuant to Rule 12(b)(6); and moves for transfer pursuant to 28 U.S.C. § 1404(a). Dkt. Nos. 30, 31.

For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Miller Family Industries, LLC ("Plaintiff") is a limited liability company organized under the laws of the State of Delaware. Dkt. No. 11 ("Amended Compl.") ¶ 2. Its principals are Alan and Abraham Miller. *Id.* ¶ 7. Defendant is an individual who resides in the State of California. *Id.* ¶ 3.

In early spring 2023, Defendant approached Plaintiff with a proposal to fund a new company to provide commercial working capital and financing products to small- and medium-sized businesses located across the United States. *Id.* ¶ 7. He represented that he had experience running a financial funding institution and possessed many potential customer contacts in various states and that, if Plaintiff funded the company, it could expect to receive a twenty percent return

on investment within the first six months of operation of the new proposed company. *Id.* ¶¶ 8–9. He further represented that the startup expenses and proposed labor costs for the new business would be minimal, that he was willing to put up a considerable amount of his own capital to assist with funding the new venture, that he already had a list of potential business partners and customers, and that the business would quickly produce a positive cash flow. *Id.* ¶ 11.

In reliance on those representations and financial data provided by Defendant, Plaintiff entered into negotiations to create and fund a new financial lending services company which would be managed and operated by Defendant. *Id.* ¶ 12. The negotiations resulted in the signing of a Memorandum of Understanding ("MOU"), Dkt. No. 11-1, between Plaintiff and Defendant for the formation of a Delaware company, ultimately named Levo Funding, Inc., whose business purpose would be providing "commercial working capital financing products to small business and medium sized business across the United States, with the goal of eventually entering international markets as well," *id.* ¶ 1; Amended Compl. ¶ 12. Plaintiff would be the primary investor and owner of the company, while Defendant would serve as both Chairman of the Board and Chief Executive Officer. *Id.*

Levo Funding, Inc. was incorporated in the State of Delaware on May 31, 2023, and its bylaws were adopted on June 14, 2023. *Id.* ¶ 13. After Defendant allegedly produced misleading monthly operating statements, Plaintiff provided $5,925,000.00 between August 11, 2023, and January 19, 2024, to fund the operations of Levo Funding, Inc. *Id.* ¶ 13. Defendant continued to produce false and misleading monthly financial statements and misleading financial projections for 2024 and 2025. *Id.* ¶ 14. In all, Plaintiff advanced a total of more than $6,500,000.00 to fund Levo Funding, Inc. *Id.* ¶ 15.

Plaintiff alleges that Defendant's representations were false and that it relied upon those false representations as well as the false and misleading financial statements to create and fund the operations of Levo Funding, Inc. *Id.* ¶¶ 17–21, 24–28. It also alleges that Defendant's failure to provide true and accurate financial data and information and to be truthful regarding his experiences in the financial services industry and his relationship to business partners and customers constitutes a breach of the MOU. *Id.* ¶¶ 36–43.

## PROCEDURAL HISTORY

Plaintiff filed this action in New York State Supreme Court, New York County on February 21, 2025. Dkt. No. 1-1. On April 9, 2025, Defendant removed the case to this Court, invoking diversity jurisdiction. Dkt. No. 1. On April 16, 2025, Defendant filed a motion to dismiss, accompanied by a memorandum of law and the declaration of Christopher R. Ives and Michael S. Marron, Esq. Dkt. Nos. 3–6.

On May 7, 2025, Plaintiff filed an Amended Complaint. Dkt. No. 11. It asserts claims for fraudulent inducement, common law fraud, negligent misrepresentation, and breach of contract. *Id.* ¶¶ 16–43. On May 9, 2025, Defendant filed a motion to dismiss the Amended Complaint under the doctrine of *forum non conveniens* and under Federal Rule of Civil Procedure 12(b)(3), and in the alternative, for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 12. In support, Defendant relied on the memorandum of law and the Ives and Marron declarations submitted in connection with its motion to dismiss Plaintiff's original complaint. Dkt. Nos. 4–6. Defendant's motion did not expressly request transfer pursuant to 28 U.S.C. § 1404(a). Dkt. Nos. 4, 12. The Court issued an Order to Show Cause why the Court should not treat Defendant's motion as a motion to transfer pursuant to 28 U.S.C. § 1404(a). Dkt. No. 24. Defendant submitted a letter in response to the Order on June 30, 2025. Dkt. No. 25. Plaintiff also submitted a letter in response to the Order

on July 2, 2025. Dkt. No. 26. The Court then issued an Order stating that, seeing no objections from either party, the Court intended to treat Defendant's motion as one for transfer under 28 U.S.C. § 1404(a), and granted leave to Plaintiff to submit an affidavit in response to Defendant's motion to transfer. Dkt. No. 27. Defendant subsequently submitted a letter objecting to treatment of the initial motion to dismiss as one for transfer under Section 1404(a). Dkt. No. 28. The Court subsequently denied Defendant's motion to dismiss without prejudice. Dkt. No. 29. The Court ruled that Defendant's argument that the complaint should be dismissed for failure to plead venue was deemed waived by virtue of the failure to make that argument in Defendant's opening memorandum of law. *Id.* at 3. It held that Defendant's *forum non conveniens* motion based upon a forum selection clause which identified either Delaware state court or Delaware federal court as the chosen venue was more appropriately treated as a motion for transfer under 28 U.S.C. § 1404(a). *Id.* at 2.

Defendant then submitted a letter "renew[ing] the motion in its entirety, under the doctrine of *forum non conveniens*, both Rule 12(b)(3) and (6), and, at the Court's invitation, under 28 U.S.C. § 1404(a)," and, in the alternative, requesting reconsideration of the prior order. Dkt. No. 30. The Court issued an endorsement construing the letter as "a renewed motion to dismiss under the doctrine of *forum non conveniens*, Rule 12(b)(3) and (6), and a motion to transfer pursuant to 28 U.S.C. § 1404(a)." Dkt. No. 31. Plaintiff filed a memorandum of law in opposition to the motion on July 25, 2025. Dkt. No. 32. Defendant filed a reply memorandum of law in further support of the motion on August 1, 2025.[1] Dkt. No. 34.

---

[1] Defendant additionally moves for the Court to issue sanctions under 28 U.S.C. § 1927 on Plaintiff's counsel for "multipl[ying] the proceedings . . . unreasonably and vexatiously." Dkt. No. 34 at 10–11. The argument is improperly raised for the first time on reply. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a

4

# DISCUSSION

Defendant argues that the Court should dismiss the complaint under the doctrine of *forum non conveniens*, for improper venue, or failure to state a claim for relief; or that the Court should transfer the complaint pursuant to 28 U.S.C. § 1404(a).[2] Dkt. Nos. 12, 30. Defendant also argues that, in the event the Court dismisses the complaint, the Court should award him contractual attorney's fees. *Id.*

Under Section 1404(a), to determine whether transfer is appropriate, the Court applies a two-step inquiry. First, it determines "whether the action could have been brought in the proposed transferee court." *See Inventel Prods. LLC v. Penn LLC*, 2017 WL 818471, at *2 (S.D.N.Y. Feb. 28, 2017) (Nathan, J.). Second, the Court "'balance[s] the private and public interests,' to determine whether transfer is warranted '[f]or the convenience of parties and

---

reply brief."). In addition, "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997); *see also Rothman v. Complete Packing & Shipping Supplies, Inc.*, 2024 WL 4350433, at *5–6 (E.D.N.Y. 2024) (explaining the impropriety of raising a motion for sanctions under Section 1927 in a reply brief). The Court therefore declines to consider Defendant's argument for sanctions.

[2] Defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3) using the same memorandum of law filed in support of the initial motion to dismiss. Dkt. Nos. 4, 30, 31. However, as mentioned previously, the Court ruled that Defendant's argument that the complaint should be dismissed for failure to plead venue was deemed waived by virtue of the failure to make that argument in Defendant's opening memorandum of law. Dkt. No. 29 at 3. Given Defendant relies on the same initial brief to support the present motion, the Court again rules that Defendant's argument pursuant to Rule 12(b)(3) is deemed waived. However, even if the motion were properly raised and the Court found venue to be improper, the interest of justice would still point to transfer to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1406(a), as the proper outcome. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013) (stating that when "venue is improper," "the case must be dismissed or transferred under § 1406(a)"); *id.* at 66 (observing in the context of 1404(a) that "in all but the most unusual cases," "'the interest of justice' is served by holding parties to their bargain"); *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) ("[C]ourts have recognized that if transfer pursuant to 1404(a) is appropriate, then *a fortiori* transfer is appropriate under 1406(a) . . . and that the crucial determination under either section is whether the proposed transfer is in the interest of justice.").

witnesses, [and] in the interest of justice.'" *Id.* (alteration in original) (first quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); and then quoting 28 U.S.C. § 1404(a)). "Among the factors to be considered in determining whether to grant a motion to transfer venue 'are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). "[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine,* 599 F.3d at 114 (quoting *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Accordingly, "district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion," *N.Y. Marine,* 599 F.3d at 114 (collecting cases), and operate with considerable discretion, *see Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) (summary order) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." (quoting *Filmline*, 865 F.2d at 520)).

Where the parties have formed a contract containing a valid mandatory forum selection clause, the discretionary language of Section 1404(a) becomes nearly mandatory, and the district court should transfer the case to the forum specified in the clause except "under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) (applying principle to a contract that stated all disputes between the parties "shall be litigated in the Circuit Court for the City of Norfolk,

6

Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division"). "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 63–64.

Defendant argues that the parties are bound by the MOU to litigate this dispute in the state or federal courts of Delaware. Paragraph Six of the MOU provides as follows:

> **6. Governing Law and Venue**. This MOU and the rights and obligations of the Parties hereunder shall be governed, construed and their provisions interpreted by, under and in accordance with, the laws of the State of Delaware (excluding the laws applicable to conflicts or choice of law). The Parties hereto, to the extent that they may legally do so, hereby irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware.

MOU ¶ 6.

"[A] district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019). "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). "[A] party may overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 218. Federal common law governs analysis of the first and fourth prongs, but, as to the second and third prongs, "if [courts] are called upon to determine whether a particular forum selection clause is mandatory or permissive, or whether its scope encompasses

7

the claims or parties involved in a certain suit, [courts] apply the law contractually selected by the parties." *Id.*

Plaintiff does not dispute that the forum selection clause was reasonably communicated. *See* Dkt. No. 34 at 5. "A forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011), *aff'd,* 714 F.3d 714 (2d Cir. 2013). The forum selection clause here is clear and unambiguous. Additionally, the clause was clearly and prominently set forth in the same font and type as the remainder of the agreement, in a section addressed exclusively to "Governing Law and Venue," in a contract of only seven pages. *See Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 444–445 (E.D.N.Y. 2025) (collecting cases).

Plaintiff argues instead that the forum selection clause is not mandatory, Dkt. No. 34 at 5, and that it does not govern the disputes at issue in this case, *id.* at 6–9. "A forum selection clause is deemed permissive if it confers jurisdiction in one forum without excluding jurisdiction elsewhere." *Cuhadar*, 766 F. Supp. 3d at 445 (quoting *Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 5009713, at *7 (S.D.N.Y. Dec. 6, 2024)). Under federal common law and New York law, "[a] forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d. Cir. 2007)) (applying federal common law); *see Molokotos-Liederman v. Molokotos*, 2023 WL 5977655, at *16 (S.D.N.Y. Sept. 14, 2023) (applying New York law and holding that "[t]he language 'submit to the exclusive jurisdiction' is 'precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory'" (quoting *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d

401, 410–11 (S.D.N.Y. 2012))).  Delaware law is to the same effect.  *See JM Smith Corp. v. AstraZeneca Pharms. L.P.*, 2020 WL 4605241, at *4 (S.D.N.Y. Aug. 11, 2020); *McWane, Inc. v. Lanier*, 2015 WL 399582, at *4 (Del. Ch. Jan. 30, 2015).[3]  Here, "the provisions use obligatory and exclusionary language and thereby 'requir[e]' rather than 'simply permi[t]' the parties to bring suit in [Delaware]."  *Idle Media,* 2024 WL 5009713, at *7 (quoting *Martinez*, 740 F.3d at 217).

*Town of Georgetown v. David A. Bramble, Inc.*, upon which Plaintiff relies, is not to the contrary, 2015 WL 4935502, at *2 (D. Del. Aug. 19, 2015).  In *Town of Georgetown*, the court considered whether a forum selection clause contained in a performance bond constituted a waiver of the defendant's right to remove a case filed in state court to federal court.  The court concluded that the clause did not constitute a waiver.  However, in that case, the clause at issue provided "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction, in the location in which the Work . . . is located."  *Id.* at *1.  The court held that the forum selection clause did not contain mandatory language because the parties "did not expressly consent (or submit) to any court's exclusive jurisdiction."  *Id.*  Here, the parties consented to the "*exclusive* jurisdiction and venue of the state or federal courts of the State of Delaware."  MOU ¶ 6 (emphasis added).

"When determining the scope of a forum selection clause, the Court examines the substance of the claims, shorn of their labels, and relates the substance of the claims to the

---

[3] Delaware law applies to the determination of whether the forum selection clause is mandatory and whether the claims here fall within the scope of the clause.  *See Martinez,* 740 F.3d at 217–218 (stating that federal law "should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable," whereas "interpretive questions," such as whether the text of the clause renders the clause mandatory permissive, or the scope of the clause, require application of the "body of law selected in an otherwise valid choice of law clause").

precise language of the clause, discounting the precedential weight of cases that deal with dissimilarly worded clauses." *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp.3d 429, 444 (S.D.N.Y. 2022) (quoting *Martin Pro.,* 907 F. Supp. 2d at 412). A forum selection clause that is limited to claims arising under a contract is narrow. A narrow clause exclusively covers claims which originate from the contract itself; only where a plaintiff "asserted . . . rights or duties" relevant to the claim "under [the] contract" will a narrow clause apply. *Phillips*, 494 F.3d at 391; *see also ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, 2011 WL 4552508, at *5 (Del. Ch. Sep. 14, 2011) ("[N]arrow forum selection clauses only cover claims dealing directly with rights embodied in the relevant contract."); *Prod. Res. Grp., L.L.C.*, 907 F. Supp.2d at 412–413. By contrast, a clause that is directed to claims that "arise under" or "relate to" or are "in connection with" a contract is considered broad. *See Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 294–95 (Del. 1999). It brings within it "all possible claims that touch on the rights set forth in [the parties'] contract." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002).

      The forum selection clause here is broad. The clause is not limited to claims that arise out of the MOU. Rather, the clause is extended to the limits permitted by law: the parties agree to subject to the exclusive jurisdiction of the courts of Delaware "to the extent that they may legally do so." MOU ¶ 6. All four claims in the Amended Complaint readily fall within the forum selection clause. The First Count is for fraudulent inducement. Plaintiff alleges that "Defendant made material misrepresentations and/or omitted facts to MFI and its representatives to induce MFI to create and fund the operations of Levo Funding, Inc." Dkt. No. 11 ¶ 17. But the vehicle pursuant to which Plaintiff agreed to create and fund Levo Funding, Inc. was the MOU. *Id.* ¶ 12. "The fraudulent inducement claim arises out of the [MOU] because it stems

from that Agreement and would not be independently assertable apart from that Agreement." *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *4 (Del. Ch. Mar. 23, 2021) (internal citations and quotations omitted). In Count Two, Plaintiff alleges that "Defendant made material misrepresentations and/or omitted facts to [Plaintiff] and its representatives to induce [Plaintiff] to continue funding the operations of Levo Funding, Inc, in 2023 and 2024." Dkt. No. 11 ¶ 24. However, the entity that was incorporated as Levo Funding, Inc., was created pursuant to the MOU and it is the MOU that required Plaintiff to make capital contributions to that entity for a five-year period, in the amount of $27,000,000 to $65,000,000. MOU ¶ 2(c). That agreement also vests Defendant with the duties and responsibilities of CEO and Chairman of the Board. *Id.* ¶ 1(d), (f). Count Three alleges that Plaintiff relied on Defendant's negligent misrepresentations in "first creating Levo Funding, Inc., and advancing $5,925,000.00 in startup and operational funds, and next advancing an additional $600,000.00 to continue funding the day-to-day operations of Levo Funding, Inc. in 2023 and 2024." Dkt. No. 11 ¶ 34. That claim would not exist without the relationship created by the MOU. Finally, Count Four is the most straightforward of all. It alleges breach of the MOU. The parties clearly intended any dispute arising under the MOU to be brought in Delaware.

  Plaintiff argues to the contrary only by misreading the forum selection clause. Dkt. No. 34 at 7. Focusing on the first sentence of the "Governing Law and Venue" paragraph, Plaintiff contends that the forum selection clause applies only with respect to "the rights and obligations of the Parties" under the MOU. *Id.; see also* MOU ¶ 6. But the language upon which Plaintiff relies comes from the first sentence of Paragraph Six. That sentence is addressed to choice of law. It provides: "This MOU and the rights and obligations of the Parties hereunder shall be governed, construed and their provisions interpreted by, under and in accordance with, the laws

of the State of Delaware (excluding the laws applicable to conflicts or choice of law)." *Id.* The parties' agreement with respect to choice of forum is contained in the second sentence. That sentence does not contain the limiting language of the first sentence. Rather, it broadly commits the parties to litigate in Delaware to the extent that they are able, through a forum selection clause, to make that commitment. *Id.* ("The Parties hereto, *to the extent that they may legally do so*, hereby irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts of the State of Delaware.") (emphasis added). Accordingly, the forum selection clause is not limited to disputes concerning the rights and obligations under the MOU.

      Plaintiff argues that enforcement of the forum selection clause would be unreasonable. Dkt. No. 34 at 9–10. To avoid application of the forum selection clause, "Plaintiff must clearly show that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Martin Pro.*, 907 F. Supp. 2d at 415 (internal citations and quotations omitted). Plaintiff's argument is premised on the notions that, first, the forum selection clause is narrow, and second, that "a trial in Delaware may result in difficulty and inconvenience as the Plaintiff will need to retain outside counsel to prosecute this matter." Dkt. No. 34 at 9–10. Plaintiff's first premise is faulty. The forum selection clause is not narrow. And the second does not establish that the clause is unreasonable. Every mandatory forum selection clause, virtually by definition, will require that a party who has committed to litigate in a particular forum obtain counsel licensed to practice in that particular forum. That is the nature of a mandatory forum selection clause. But the fact that Plaintiff will have to obtain outside counsel to litigate this case in Delaware does not make the forum selection clause unreasonable any more than it would be unreasonable to require Defendant, in the absence of a forum selection clause, to obtain counsel to litigate in the forum of Plaintiff's choosing. The parties chose to

determine in advance where they would resolve a dispute. The fact that such choice is now less than convenient to Plaintiff does not relieve it from the obligations it freely undertook at the time of contracting.

Finally, Plaintiff argues that transfer does not promote the convenience of the parties and witnesses, because (1) Plaintiff chose to file in New York State court; (2) witnesses would need to travel to reach either New York or Delaware courts; (3) upon transfer, Plaintiff and Defendant will both need to retain local counsel in Delaware to prosecute, meaning both parties are inconvenienced; (4) the locus of operative facts is in New York; (5) the availability of process to compel attendance applies at the same level of convenience in either jurisdiction; (6) both parties have the means to litigate the claim in the present forum; (7) and trial efficiency and interest of justice lean in favor of preserving the action with the Court. Dkt. No. 34 at 18–21; *see also D.H. Blair*, 462 F.3d at 106–07 (stating the relevant factors).[4] However, where the forum selection clause is enforceable, the Court may only bar transfer "under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Constr.*, 571 U.S. at 62. Extraordinary circumstances are only found where Plaintiff has made compelling arguments "about public-interest factors." *Id.* at 64. All of Plaintiff's arguments against transfer sound in the convenience of the parties or in the parties' private interests. Where parties agree to an enforceable forum-selection clause, these private interest factors are deemed to "weigh entirely in favor of the preselected forum." *Id.* Thus, Plaintiff's arguments fail.

Where a "sister federal court is the more convenient place for trial of the action," Congress supplanted the doctrine of *forum non conveniens* within the federal court system by

---

[4] Plaintiff concedes that "if it is decided that the Agreement applies to all counts of the Amended Complaint . . . Delaware would be the forum more familiar with the law." Dkt. No. 34 at 21.

enacting 28 U.S.C § 1404(a). [5]  *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 264–65 (1981) ("Although [1404(a)] was drafted in accordance with the doctrine of *forum non conveniens*,[] it was intended to be a revision rather than a codification of the common law").  Section 1404(a) gives the district court discretion to transfer a civil action to any district "in which it might have been brought" or to any district to which all parties have consented "[f]or the convenience of the parties and witnesses." 28 U.S.C. 1404(a).  Thus, Section 1404(a) "replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr.*, 571 U.S. at 60; *see also* 15 Wright & Miller's Federal Practice & Procedure § 3841 (4th ed. 2023) ("Forum non conveniens results in dismissal, while invocation of Section 1404(a) results in the less draconian order of transfer. . . . Forum non conveniens dismissal is appropriate only when the superior alternative forum is in a different judicial system, to which transfer is impossible. . . . When the superior alternative is another federal district court, the case is transferred, and not dismissed.").

The forum selection clause gives the suing party the option to sue in federal or in state court in Delaware.  Had the clause only named Delaware state court, the Court would have dismissed the action under the doctrine of *forum non conveniens*.  *See Atl. Marine Constr.*, 571 U.S. at 60 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.").  However, the Supreme Court has stated that *forum non conveniens* is only applicable in the "*rare instances*" where "a state or

---

[5] Motions for dismissal under 28 U.S.C. 1406(a) and Rule 12(b)(3) are only appropriate when "venue is 'wrong' or 'improper.'" *Atl. Marine Constr.*, 571 U.S. at 55.  The Court previously ruled that Defendant's challenge to venue under Rule 12(b)(3) was waived.  Dkt. No. 29 at 3.  A forum-selection clause alone "does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Atl. Marine Constr.*, 571 U.S. at 59.  The clause may be "enforced through a motion to transfer under § 1404(a)" even where venue is otherwise proper.  *Id*.

territorial court serves litigational convenience best." *Sinochem. Intern. Co. Ltd.*, 549 U.S. at 430 (emphasis added); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (stating that the "purpose of [transfer under 1404(a)] is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense,'" where dismissal alone is inappropriate); *DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, 2024 WL 1326964 (2d Cir. 2024) (summary order) (stating that where a "forum-selection clause allows for actions . . . to be brought in *either* the federal or state courts of Delaware," and the moving party requested transfer under 1404(a), "transfer to a Delaware federal court—as opposed to dismissal without prejudice to refiling in state court—is warranted.").

Therefore, because the forum selection clause is mandatory, no extraordinary circumstances are at play, Plaintiff's claims fall entirely within the ambit of the broad clause, and enforcement of the clause is reasonable, the Court finds it appropriate to transfer the case to the United States District Court for the District of Delaware. [6]

## CONCLUSION

Defendant's motion is GRANTED IN PART and DENIED IN PART.

---

[6] Defendant originally argued that the complaint should be dismissed under Rule 11(a) of the Federal Rules of Civil Procedure for failure to contain the signature of counsel. Dkt. No. 4 at 20–21. Defendant withdrew that argument in reply to Plaintiff's opposition. *See* Dkt. No. 22 at 1 n.1. In any event, following Defendant's original motion to dismiss, Plaintiff filed the Amended Complaint with the signature of counsel. Thus, the Amended Complaint complies with Rule 11(a). In light of the Court's order transferring this case, the Court declines to address Defendant's argument that the complaint should be dismissed for failure to state a claim for relief. *See Scweitzer v. Nevels*, 669 F. Supp.3d 242, 246 (S.D.N.Y. 2023) (stating that where transfer is appropriate, district courts should "leave the motion to dismiss to be decided by the transferee court"); *Enigma Software Group USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017) (declining to rule on a 12(b)(6) motion where transfer is appropriate); *Saltzberg v. TM Sterling/Austin Associates, Ltd.*, 746 F. Supp. 1225, 1228 (S.D.N.Y. 1990) (stating that, where transfer has been granted, it is proper to "defer to the transferee court" to determine the defendant's 12(b)(6) motion to dismiss).

The Clerk of Court is respectfully directed to transfer this case to the United States District Court for the District of Delaware, to terminate all pending motions, and to close this case.

SO ORDERED.

Dated: August 4, 2025
      New York, New York

                                              LEWIS J. LIMAN
                                         United States District Judge